**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEITH POWELL | ) |
| | ) Case No.: 1:23-cv-14098 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| VILLAGE OF HOMEWOOD, a municipal corporation | ) |
| VILLAGE OF HOMEWOOD POLICE CHIEF DENISE | ) |
| MCGRATH, VILLAGE OF HOMEWOOD DEPUTY | ) |
| POLICE CHIEF ROBERT MISNER, VILLAGE OF | ) |
| HOMEWOOD SERGEANT CRAIG SLINE, VILLAGE | ) |
| OF HOMEWOOD POLICER OFFICER ERIC BUJAK, | ) |
| in their individual capacities, and KYLE HOEFLER | ) |
| | ) |
| Defendants. | ) JURY DEMAND |

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, **KEITH POWELL** by and through counsel Danielle A. Pinkston of

Pinkston Law Group, P.C., complaining against Defendants, Village Of Homewood, a municipal

corporation, Village Of Homewood Police Chief Denise McGrath, Village Of Homewood Deputy

Police Chief, Robert Misner, Village Of Homewood Sergeant Craig Sline, Village Of Homewood Police

Officer Eric Bujak, in their individual capacities, and Kyle Hoefler, stating as follows:

**JURISDICTION AND VENUE**

1. Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction over this matter, which arises

   in part under the laws of the United States including 42 U.S.C. §1983. This Court has the

   authority to take jurisdiction over all other claims, as supplemental jurisdiction.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367.

   This action seeks redress for violations of Plaintiff's constitutional and civil rights.

3. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§

   2201(a) and 2202.

1

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants either reside in and or the events giving rise to Plaintiff's claims occurred in the Northern District of Illinois.

**PARTIES**

5. Plaintiff Keith Powell is an African American citizen of the United States, who resides in Homewood, County of Cook, State of Illinois within the Northern District Of Illinois Eastern Division.

6. Defendant Village of Homewood is a municipal corporation, as defined in the Illinois Municipal Code, 65 ILCS 5/1-1-2(1). Defendant, Village of Homewood, is a local government in Illinois created and existing by virtue of the laws of Illinois. The Village of Homewood Police Department is a Department of the Village of Homewood. Defendant Village of Homewood employs the personnel of its Police Department and is responsible for its lawful operations, administration, maintenance, training, supervising personnel employed, and otherwise controls the Village of Homewood Police Department. Defendant Village of Homewood has established policies and procedures for its Police Department and other relevant provisions. The acts and/or omissions alleged in this Complaint were under color of authority, color of state law, as well as under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the Village of Homewood. Defendant, Village of Homewood is liable for the actions of its employees. Defendant Homewood Police Department is a department of the Village. HPD is the Village's primary law enforcement agency. The Village of Homewood owns, operates, manages, directs, and controls the HPD.

7. On September 25, 2022 and at all relevant times to this Complaint, Defendant Village Of Homewood Police Chief Denise McGrath, was employed by the Village Of Homewood. She

was and still is an agent, employee, and/or servant of the Village Of Homewood and was acting within the course and scope of that employment and under color of law.

8. On September 25, 2022 and at all relevant times to this Complaint, Defendant Village Of Homewood Deputy Police Chief, Robert Misner, was and still is employed by the Village Of Homewood. He was an agent, employee, and/or servant of the Village Of Homewood and was acting within the course and scope of that employment and under color of law.

9. On September 25, 2022 and at all relevant times to this Complaint, Defendant Village Of Homewood Sergeant Craig Sline was and still is employed by the Village Of Homewood. He was an agent, employee, and/or servant of the Village Of Homewood and was acting within the course and scope of that employment and under color of law

10. On September 25, 2022 and at all relevant times to this Complaint, Defendant Village Of Homewood Police Officer Eric Bujak was and still is employed by the Village Of Homewood. He was an agent, employee, and/or servant of the Village Of Homewood and was acting within the course and scope of that employment and under color of law

11. On September 25, 2022 Kyle Hoefler, was and still is a Caucasian citizen of the United States residing in Homewood, County of Cook, State of Illinois within the Northern District Of Illinois Eastern Division.

## FACTS

12. On Sunday September 25, 2022, at approximately 12:30 am, Plaintiff was sleeping downstairs on the couch when he was awakened by an Intruder, now known as Kyle Hoefler.

13. Defendant Hoefler attempted to make entry through the front door of the home belonging to Plaintiff and his wife Mrs. Powell by beating on the door and screaming, "Open the fucking door

3

and let me in."

14. It took Plaintiff a few seconds to gather his thoughts and realize that Defendant Hoefler, was attempting to break in and he told him multiple times to leave and that the police were on their way.

15. To no avail, Defendant Hoefler continued banging on the front door and attempting to make entry while cursing.

16. The Plaintiff went upstairs to get his firearm, alert his wife and kids that someone was trying to break into their home, and for them to take cover.

17. He then told his wife to call the Homewood Police Department and she did at approximately 12:35 am.

18. After reaching the police, Mrs. Powell witnessed Defendant Hoefler leaving the front steps and attempting to open the doors of their three (3) vehicles in their driveway.

19. Their neighbors across the street also witnessed Defendant Hoefler trying to open the vehicles and looking in their garage windows.

20. Defendant Hoefler could not open the vehicles so he returned to Mr. and Mrs. Powell's front door, resumed banging, cursing, and attempting to open their front door.

21. The Plaintiff went downstairs with his firearm and told Defendant Hoefler (multiple times) to leave now, and the police were on their way.

22. Defendant Hoefler continued attempting to open the door, banging on it, and cursing, until the police arrived onsite.

23. When Defendant Craig Sline arrived, Defendant Hoefler was seated on Plaintiff's front steps.

4

24. Plaintiff opened the door and told Defendant Hoefler to leave, forgetting that he still had his firearm in his right hand.

25. Defendant Sline unholstered his firearm, blinded Plaintiff with his flashlight, and yelled for Plaintiff to put it down.

26. Plaintiff immediately put his firearm down, cleared the chamber, and told his wife to take the firearm inside.

27. During this time, Defendant Hoefler left the front steps and began walking down the street.

28. Plaintiff told Defendant Sline to stop focusing on him and to turn his attention to Defendant Hoefler who continued walking away from his home, but even after Plaintiff's firearm was put away by his wife, Defendant Sline remained focused on Plaintiff, not Defendant Hoefler, who continued walking away from their property.

29. As a resident of Homewood and one who reached out to the police department, Plaintiff demanded that Defendant Sline do his job and arrest Defendant Hoefler for criminal trespassing and disturbing the peace.

30. Tensions rose as a result of Defendant Sline's refusal to address Defendant Hoefler, who attempted to trespass into Mr. and Mrs. Powell's home and vehicles.

31. Defendant Sline treated Plaintiff like he was the criminal and Defendant Hoefler like he was the innocent victim.

32. Plaintiff told Defendant Sline that he and his wife wanted to file charges against Defendant Hoefler for criminal trespass and disturbing the peace and Defendant Sline then stated, "It is not against the law to be drunk."

33. No officer onsite performed a field sobriety test on Defendant Hoefler while he was at the scene.

34. Surely, if a Caucasian Homewood resident called the police and reported that Defendant Hoefler or an African American person was attempting to break into his or her real and personal property,

5

this matter would have been handled differently. Neither Defendant Hoefler nor or an African American person would have been able to so easily walk away without recourse, as if nothing happened.

35. Plaintiff is a United States' citizen and resident of Homewood whose tax dollars fund the Homewood Police Department, including Defendant Sline's salary.

36. Plaintiff and his family should be treated like similarly situated Caucasian residents and be afforded the same protections and privilege as afforded to White residents.

37. On September 26, 2022, after consulting with Defendant Deputy Chief Misner, Defendant Sline completed an Illinois State Police Clear and Present Danger form.

38. On September 27, 2022, Sline's Illinois State Police Clear and Present Danger form was approved by Defendant Chief Misner and was submitted to the Illinois State Police FOID Unit.

39. On the Clear and Present Danger form, Defendant Sline made false statements against Plaintiff defaming his character, portraying him in a false light, and caused his FOID card to be revoked.

40. Among the numerous reckless, malicious, and unsubstantiated falsehoods contained therein were the following statements:

   a. 430 ILCS 65/8 (f) - A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community.

41. Defendant's statements regarding Plaintiff were made with knowledge that such statements were false and/or with reckless disregard for the truth of same, and Defendant Sline acted with malice and wanton disregard of the rights of Plaintiff.

42. Defendant Sline knew at all relevant times that all of the false and defamatory statements, suggestions, misstatements, innuendos, insinuations, and inferences were false.

43. Defendant Sline maliciously and recklessly published the aforementioned statements, suggestions, misstatements, innuendos, insinuations, and inference with outrageous and reckless disregard for the truth.

44. Defendant Sline falsely imputed to Plaintiff that he was mentally unstable or unfit and injured Plaintiff's Second Amendment right to carry a weapon and otherwise.

45. Defendant Sline's false statements and the implications of those statements concerning Plaintiff are libelous.

46. Libel is not a form of protected speech under the First Amendment.

47. Neither a political campaign nor an Internet political blog nor "political commentary" offers justification or privilege to publish malicious falsehoods about Plaintiff.

48. Defendant Sline has irresponsibly injured Plaintiff's good name and reputation.

49. On or around September 29, 2022, Plaintiff received a letter from the Illinois State Police indicating,

> "Your FOID card has been revoked pursuant to Section 8 of the Illinois FOID Card Act (430 ILCS 65/8). You are prohibited from possessing, purchasing, selling, transferring or exchanging firearms or firearms ammunition based upon the specific grounds identified below: - 430 ILCS 65/8 (f) - A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community. The FOID Act (430 ILCS 65/9.5) requires that within 48 hours of receiving this notification you:
>
> 1. Surrender your Firearm Owner's Identification Card to the local law enforcement agency where you reside;
> 2. Transfer all firearms in your possession or control…" **(See Exhibit A)**

50. On or around November 1, 2022, Plaintiff received a letter from Deputy Police Chief Robert Misner, indicating that a thorough investigation of his complaint lodged regarding the conduct of their officers on 9/25/2022 under Homewood Case #H22-14313 and Plaintiff's Complaint was "Not Sustained."

7

51. In the summer of 2019, when Plaintiff's youngest son was 13, he was chased out of the park near their home by eight white teenagers.

52. Plaintiff tried obtaining assistance from the police and nothing was done except Homewood Police Officers treated them like criminals, when they were actually the victims and tried to obtain assistance.

53. The police never wrote a report, nor did they take down the boy's name. The incident was featured on the news.

54. On another occasions, Plaintiff's younger son got off the school bus and had to use the bathroom and could not make it home.

55. To prevent from urinating on himself, he did so on the sidewalk.

56. A white neighbor's Ring Camera captured this and they called the Homewood Police.

57. Officers went to Plaintiff's home, asked for their son, and a disorderly conduct citation was issued to the child.

58. He was also accused of showing his genitals to another minor who was in the window and observed him relieving himself.

59. Plaintiff had to hire a lawyer and spent at least one year going back and forth to court.

**COUNT I**
**Discrimination On The Basis Of Race And National Origin In Violation Of The Fourteenth Amendment Equal Protection Clause Pursuant To 42 U.S.C. § 1983**
**(Against Defendant Village of Homewood)**

60. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

61. The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires that the government treat all people equally under the law without regard for, among other things, their race or national origin.

62. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, recognizes the right to equal protection under the law. Both provisions prohibit

"selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996)).

63. As such, the Equal Protection Clause prohibits police officers from treating residents different because of racial or ethnic traits.

64. It also prohibits police officers from conducting law enforcement activities in a manner that has a discriminatory effect on a racial or ethnic group, and that is motivated by a discriminatory purpose.

65. In the alternative, it prohibits the government from administering facially neutral policies or practices with deliberate indifference toward the discriminatory effect of those policies based on race or national origin.

66. Defendants Craig Sline and Defendant Eric Bujak's failure to assist Plaintiff and his African American family, residents of Homewood who asked for police assistance, includes but is not limited to the following policies, practices, and customs:

   a. Viewing Black residents as criminals and not victims of crimes;

   b. Defendant's actions through its agents violated the rights of the Plaintiff and other Blacks under the Equal Protection Clause to be free of discrimination on the basis of race and national origin;

   c. Conducting extremely high volumes of stops, frisks, searches, and issuing police reports, citations, and tickets against Blacks in Homewood; and

   d. Turning a blind eye and "Selectively enforcing of the law" when Caucasian residents violate the law or other residents' rights, based on considerations such as race and national origin.

67. Defendant carried out its selective enforcement of the laws because of its adverse effects on Black and a reasonable inference can be drawn that the Village of Homewood, its leaders,

9

and supervisors intended those effects to occur.

68. Defendant's policy, custom, and/or practice deprived Plaintiff of his rights under the Fourteenth Amendment to the U.S. Constitution.

69. The Village of Homewood and its final policymakers, including the Mayor and Police Chief Denise McGrath developed, implemented, enforced, encouraged, and sanctioned HPD's policy and practice of discrimination against African Americans including Plaintiff, on the basis of race and national origin.

70. Alternatively, Defendant was and is deliberately indifferent toward a well-known practice or custom by HPD officers.

71. Further in the alternative, Defendant has failed to screen, train, supervise, and hold HPD officers and supervisors accountable for their selectively enforcing of the law based on considerations such as race and national origin, with deliberate indifference to the known or obvious risk of discrimination by HPD officers.

72. The Plaintiff is Black and suffered a violation of a clearly established right to equal protection of the law by being subjected to selective enforcement of the law motivated by race and/or national origin.

73. Defendant's selective enforcement of the law directly and proximately caused, and continues to cause, the violation of Plaintiff's rights to equal protection of the law.

74. Defendant's conduct continues to violate the Fourteenth Amendment rights of Plaintiff and other Black people in Homewood on a regular basis and is the direct and proximate cause of widespread dignitary, emotional, and/or physical harm.

75. The Defendant through its employees acted under color of state law when their actions, policies, practices, customs, and omissions create a real, imminent, and substantial threat that the Plaintiff will again be subjected to selective enforcement of the law in violation of his

Fourteenth Amendment rights.

76. As a direct and proximate result of Defendant's policies and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT II**
**Discrimination On The Basis Of Race And National Origin In Violation Of Title VI Of The Civil Rights Act Of 1964, 42 U.S.C. § 2000d, et seq.**
**(Against Defendant Village of Homewood)**

77. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein

78. Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

79. The Defendant may receive federal financial assistance through numerous grants and other awards, including but not limited to funds from DOJ's Bureau of Justice Assistance, supporting a wide variety of HPD programs and activities.

80. The Defendant may receive federal grants from the Bureau of Justice Assistance for various programs and activities administered by HPD on behalf of the Village.

81. These include but are not limited to annual "Justice Assistance Grants" as well as numerous other grants for various other law enforcement programs.

82. Plaintiff is an intended beneficiary of the federal financial assistance provided to the Defendant being that he is a taxpayer who resides in Homewood.

83. Defendant's selective enforcement of the law discriminates against the Plaintiff on the basis of race and/or national origin, in violation of Title VI.

11

84. Defendant's selective enforcement of the law includes but is not limited to the following policies, practices, and/or customs:

    a.  Viewing Black residents as criminals and not victims of crimes;

    b.  Defendant's actions through its agents violated the rights of the Plaintiff and other Blacks under the Equal Protection Clause to be free of discrimination on the basis of race and national origin;

    c.  Conducting extremely high volumes of stops, frisks, searches, and issuing police reports, citations, and tickets against Blacks in Homewood; and

    d.  Turning a blind eye and "Selectively enforcing of the law" when Caucasian residents violate the law or other residents' rights, based on considerations such as race and national origin.

85. Defendant's selective enforcement of the law directly and proximately caused, and continues to cause, the violation of Plaintiff's right to be free from discrimination on the basis of race and national origin, in violation of Title VI of the Civil Rights Act of 1964.

86. Defendant's conduct continues to violate the statutory rights of the Plaintiff and other Black residents in Homewood on a daily basis and is the direct and proximate cause of widespread dignitary, emotional, and/or physical harm.

87. Defendant's policies, practices and customs directly and proximately caused, and continue to cause, the violation of Plaintiff's Title VI rights.

88. As a direct and proximate result of Defendant's policies and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT III**
**Violation of 42 U.S.C. §1981**
**(Against Defendants Craig Sline, Eric Bujak, and Village Of Homewood)**

89. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

90. Defendants violated §1981 because they intentionally engaged in racially motivated abuse of government power, denied Plaintiff the full and equal benefit of the state criminal laws and like punishment.

91. State criminal laws are designed to deter crime against all residents and visitors to Homewood Illinois, to protect all members of the public, and to punish those who offend.

92. The Defendants' intentionally protected the criminal conduct Defendant Hoefler who attempted to burglarize (720 ILCS 5/19-1) Plaintiff's real and personal property, committed a trespass to his property (720 ILCS 5/21-3), and disturbed the peace (720 ILCS § 5/26-1) because he is a Caucasian male.

93. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT IV**
**Discrimination On The Basis Of Race And National Origin**
**In Violation Of Article I, Section 2 Of Illinois Constitution**
**(Against Defendant Village of Homewood)**

94. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein

95. Article I, Section 2 of the Constitution of the State of Illinois requires that the government treat all people equally under the law without regard for, among other things, their race and national origin.

13

96. Article I, Section 2 prohibits intentional discrimination on the basis of race and national origin.

97. As such, Article I, Section 2 prohibits police officers from conducting racial or ethnic selective enforcement of the laws.

98. Article I, Section 2 also prohibits police officers from conducting law enforcement such as stops, frisks, and searches in a manner that has a discriminatory effect based on race and/or national origin, and that is motivated by a discriminatory purpose.

99. In the alternative, it prohibits the government from administering facially neutral policies in a manner that has a discriminatory effect based on race and national origin.

100.      Defendant's selective enforcement of the laws includes, but is not limited to the following policies, practices, and/or customs:

   a. Viewing Black residents as criminals and not victims of crimes;

   b. Defendant's actions through its agents violated the rights of the Plaintiff and other Blacks under the Equal Protection Clause to be free of discrimination on the basis of race and national origin;

   c. Conducting extremely high volumes of stops, frisks, searches, and issuing police reports, citations, and tickets against Blacks in Homewood; and

   d. Turning a blind eye and "Selectively enforcing of the law" when Caucasian residents violate the law or other residents' rights, based on considerations such as race and national origin.

101.      Defendant's selective enforcement of the laws violates the rights of the Plaintiff under Article I, Section 2 of the Illinois Constitution to be free of discrimination on the basis of race and national origin.

102.      Defendant's selective enforcement of the laws is a policy, custom, and/or practice

14

that deprives Plaintiff of his rights under Article I, Section 2 of the Illinois Constitution.

103.     The Village of Homewood and its final policymakers, including the Mayor and Police Chief Denise McGrath, developed, implemented, enforced, encouraged, and sanctioned HPD's policy, practice, and/or custom of selective enforcement of the laws.

104.     Alternatively, Defendant was and is deliberately indifferent to the unconstitutional acts committed by HPD officers, through their selective enforcement of the laws.

105.     The Defendant carried out more stops and searches of blacks while turning a blind eye when Whites commit crimes because of its adverse effects on Blacks, and a reasonable inference can be drawn that Village and HPD leaders and supervisors intended those effects to occur.

106.     Defendant has been on notice for decade via reports from IDOT and a HPD's own data, numerous civilian complaints, news stories, and other source that Defendant's selective enforcement of the laws involve widespread racial profiling and is rife with unjustified racial and ethnic disparities.

107.     Despite this notice, the Defendant and their final policymakers have condoned, advanced, and failed to stop the selective enforcement of the laws.

108.     Further in the alternative, Defendant has failed to screen, train, supervise, and hold HPD officers and supervisors accountable for their selectively enforcing of the law based on considerations such as race and national origin, with deliberate indifference to the known or obvious risk of discrimination by HPD officers.

109.     The Plaintiff is Black and suffered a violation of a clearly established right to equal protection of the law by being subjected to the selective enforcement.

110.     Defendant's policies, practices, and customs directly and proximately caused, and continue to cause, the violation of Plaintiff's right to equal protection of the law, in violation

15

of Article I, Section 2 of the Illinois Constitution.

111. Defendant's conduct continues to violate the constitutional rights of Plaintiff and numerous other Black people in Homewood on a regular basis and is the direct and proximate cause of widespread dignitary, emotional, and/or physical harm.

112. As a direct and proximate result of Defendant's policies and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT V**
**Disparate Treatment And Disparate Impact Discrimination In**
**Violation Of The Illinois Civil Rights Act Of 2003, 740 ILCS 23/5**
**(Against Defendant Village of Homewood)**

113. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

114. The Illinois Civil Rights Act ("ICRA") provides that no unit of local government may "subject a person to discrimination under any program or activity on the grounds of that person's race, color, or national origin." 740 ILCS 23/5(a)(1).

115. ICRA further provides that no unit of local government may "utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of his race, color, or national origin." 740 ILCS 23/5(a)(2).

116. Defendant is a unit of local government within the meaning of ICRA.

117. Defendant's the selective enforcement of the laws stop, frisk, and/or searches includes but is not limited to the following policies, practices, and/or customs:

    a. Viewing Black residents as criminals and not victims of crimes;

16

b. Defendant's actions through its agents violated the rights of the Plaintiff and other Blacks under the Equal Protection Clause to be free of discrimination on the basis of race and national origin;

c. Conducting extremely high volumes of stops, frisks, searches, and issuing police reports, citations, and tickets against Blacks in Homewood; and

d. Turning a blind eye and "Selectively enforcing of the law" when Caucasian residents violate the law or other residents' rights, based on considerations such as race and national origin.

118. Defendant's selective enforcement of the laws, stopping, frisking, and/or searching Black people at disproportionate rates unlike Whites, discriminates against Plaintiff on the basis of race and national origin, in violation of ICRA, 740 ILCS 23/5(a)(1).

119. The Village's conduct continues to violate the rights of Plaintiff and numerous other Black people in Homewood including Plaintiff on a regular basis and is the direct and proximate cause of widespread dignitary, emotional, and/or physical harm.

120. As a direct and proximate result of Defendant's policies and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

## COUNT VI
### 42 U.S.C. § 1983 First Amendment Retaliation
**(Against Defendants Police Chief Denise McGrath, Deputy Police Chief, Robert Misner, Sergeant Craig Sline, and Eric Bujak)**

121. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

122. Defendants unlawfully retaliated against Plaintiff for the exercise of his rights under the

First Amendment.

123.     The First Amendment protects a wide spectrum of free speech and association, including a resident's right to speak freely, advocate ideas, and to petition his government for redress of grievances.

124.     Plaintiff filed a complaint and tried to have Homewood rectify this, considering the circumstances and he did interviews with the media.

125.     By speaking with the media as a resident, to advocate for equality among Black and White residents, and criticizing the Village of Homewood and Village of Homewood Police Department's response to an officer issue, Plaintiff was engaged in the exercise of his rights under the First Amendment.

126.     Defendants engage in retaliatory conduct against Plaintiff based on his engagement in protected and concerted activities.

127.     Defendants attempted to intimidate, discourage, punish, humiliate, and teach Plaintiff a lesson.

128.     Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by failing to assist him and his family when his wife called the police department when Kyle Hoefler, a Caucasian man, committed crimes against Plaintiff's real and personal property.

129.     To add insult to injury, Defendants intentionally subjected Plaintiff to unequal and retaliatory treatment by failing to see Plaintiff as a man who was protecting his family and domain and instead, worked together to have Plaintiff's FOID card revoked by making false statements that Plaintiff was, "A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community the violation of laws."

130.     Defendants' actions reflect a policy, custom, or pattern of official conduct of

engaging in and condoning retaliation against individuals based in violation of the First Amendment.

131.    The actions of Defendants against Plaintiff violated his rights guaranteed under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

132.    As a direct and proximate result of Defendants' and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT VII**
**Civil Conspiracy**
**(Against Defendants Police Chief Denise McGrath, Deputy Police Chief, Robert Misner, Sergeant Craig Sline, and Eric Bujak)**

133.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

134.    The Defendants agreed among themselves to act in concert to accomplish an unlawful purpose by unlawful means in order to wrongfully deprive Plaintiff of his freedom to bear arms, liberty, and constitutional rights.

135. In the aforesaid manner, Defendants made concerted actions to accomplish an unlawful purpose by unlawful means in order to deprive Plaintiff of his constitutional rights, including his rights to due process all as described in the various paragraphs of this Complaint.

136. Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights to due process, all as described in the various paragraphs of this Complaint.

19

137. In the furtherance of the conspiracy each of the co-conspirators engaged in and facilitated numerous avert acts, including, but not limited to, those set forth above such as making false statements and or attestations against the Plaintiff and was otherwise willful participants in the joint activity.

138. The misconduct described in this count was objectively unreasonable and was undertaken intentionally and wantonly, with malice, and willful indifference to Plaintiff's clearly established rights.

139. Absent Defendants' aforesaid misconduct, Plaintiff's rights would not have been violated.

140. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT VIII**
**Monell Policy Claim**
**(Against Village of Homewood)**

141. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

142. The individual Defendants actions deprived Plaintiff of his Constitutional rights and were all undertaken under pursuant to the policy, practice, and custom of Defendant Village of Homewood's Police Department.

143. In establishing its procedures, Defendant Village of Homewood has a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that create a substantial likelihood that persons, such as Plaintiff, would be subjected to by Defendant Village of Homewood's Police Officers'

20

misconduct.

144. Likewise, Defendant, Village of Homewood has a duty to refrain from enforcing or continuing in effect policies and procedures that cause persons, such as Plaintiff, to be treated with reckless indifference by its agents, servants, and employees.

145. At all times material to this complaint the Defendant Village of Homewood and its Police Department, Superintendents, Personnel Division and/or Police Board had interrelated defacto policies, practices, and customs that were the moving force of themisconduct described in this Complaint.

146. Then named Defendants' misconduct was undertaken pursuant to one or more interrelated defacto policies, practices and/or customs of the Village of Homewood its Police Department, Personnel Division, and/or Superintendents are guilty of one or more of the following wrongfully acts or omissions:

    a. Failing to properly hire, train, supervise Homewood Police Officers;

    b. Failing to properly train and supervise Village of Homewood's Police Officers with regard to search and seizure and the use of force;

    c. refusing to supervise, reprimand, discipline, transfer, monitor, counsel and/or otherwise control Police Officers who engage in misconduct contrary to the laws, rules and regulations, thus condoning it; thereby leading Village of Homewood's Police Officers to believe their actions will never be scrutinized and in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Village of Homewood Police Officers accused of violating citizens' constitutional rights can be confident that no one will adequately investigate those accusations and Village of Homewood Police Department will refuse to recommend discipline even where the Officer has engaged in violating citizens' constitutional rights;

21

d. Failing to retrain and/or otherwise control Police Officers who engage in violating citizens' constitutional rights;

e. Failing to establish appropriate policies and procedures to address and correct the repeated violations of citizens' constitutional rights by Police Officers;

f. Inadequately and/or failing to independently and adequately investigate complaints or allegations of violations of citizens' constitutional rights and of other types of misconduct by fellow Police Officers against civilians to protect fellow officers from disciplinary, criminal and civil actions in violation of civilian rights and privileges;

g. Covering up the criminal and/or wrongful activities of fellow Police Officers, by falsely reporting, falsely or improperly investigating, and being dishonest in violation of the rights and privileges of civilians including Plaintiff;

h. Tacitly approving of law enforcement officers using their power and position to interfere with other citizens' rights, including the right to be free of interference with their rights;

i. Allowing the continuance of violations of citizens' constitutional rights and effect of policies and procedures which resulted in violations of citizens' constitutional rights against civilians, including Plaintiff;

j. As a matter of both policy and practice, the Village of Homewood Police Department facilitates the very type of misconduct at issue here by failing to protect civilians from reckless indifference of its agents, servants, and employees in its Police Department;

k. Allowing the policy, practice, and custom of a "police code of silence" resulting in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during

official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, in cases where they and their fellow officers have violated citizens' constitutional rights;

147. The defacto policies including the "police code of silence" are interrelated and exacerbate the effects of each other and said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the subject Defendant officers to conduct the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of the injuries to Plaintiff.

148. The defacto policies including the "police code of silence" were conducted with a conscious disregard for the rights and safety of Plaintiff, thereby justifying the award of exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial

149. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT IX**
**Action For Neglect To Prevent**
**42 U.S.C. § 1986**
**(Against Defendants Craig Sline and Eric Bujak)**

150. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein

151. The laws of the United States make it unlawful for two or more persons to conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

23

protection of the laws or deprive them of having and exercising any right or privilege of a citizen of the United States. *See* 42 U.S.C. § 1985(3).

152.    Commonly referred to as the Ku Klux Klan Act (Enforcement Act of 1871).

153.    42 U.S.C. § 1985 is a further vehicle by which resident selective enforcement of the laws racial bullying, intimidating, harassment, and discrimination enforce their rights to enjoy the same rights as White citizens. *See* 42 U.S.C. § 1981.

154.    The laws of the United States further state that "[e]very person, who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured…for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented…" 42 U.S.C. § 1986.

155.    Plaintiff alleges a conspiracy to deprive him of his rights within the meaning of 41 U.S.C. § 1985.

156.    Defendants sought to deprive Plaintiff of his rights to equal protection under the law and succeeded in so doing because of race and national origin.

157.    Defendants encouraged such deprivation by means of their statements, acts, and omissions.

158.    Defendants had the power to aid in preventing the commission of past and ongoing unlawful acts, but neglected to make such efforts.

159.    As such, Defendants are liable for the damages caused by them to the Plaintiff.

160.    As a direct and proximate result of Defendants' policies and conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation,

24

and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT X**
**Defamation**
**(Against Defendant Craig Sline and Robert Misner)**

161.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

162.    Defendant knowingly and willfully caused or participated in the publication statements that were false and without any foundation or basis as there is no evidence to substantiate the statements.

163.    Defendant made these defamatory and slanderous statements regarding Plaintiff to third parties with malicious intent and for the purpose of attacking Plaintiff's character and credibility.

164.    The nature and substance of the false statements imputed to Plaintiff that he was, "A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community the violation of laws."

165.    These defamatory statements were made and ratified by the Defendants against Plaintiff harmed his reputation, and caused his FOID card to be revoked.

166.    These statements were false, made in bad faith, for no legitimate purpose, and were known to be false when made.

167.    Defendant made the false statements with the direct intent to injure Plaintiff or in reckless disregard of Plaintiff's rights and the resulting consequences.

168.    Defendants made and or ratified the false statements with actual malice, with knowledge that they were false or with reckless disregard of its truth economic loss, mental suffering, personal humiliation, impairment of personal and professional reputation and standing in the community.

169.    These defamatory statements made by and ratified by the Defendants against Plaintiff

25

are defamatory under Illinois common law.

170. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**COUNT XI**
**False Light**
**(Against Defendant Craig Sline and Robert Misner)**

171. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

172. Plaintiff's reputation has been and continues to be damaged daily by defendant's publications or reports and documents which commenced on September 25, 2022 and continue to this day.

173. Plaintiff's reputation has been and continues to be damaged by the false light with which Defendant's words that portray him as being, "A person whose mental condition is of such a nature that it poses a clear and present danger to the applicant, any other person or persons or the community."

174. In other words Defendants portrayed Plaintiff as being mentally unfit to possess a firearm.

175. Plaintiff's reputation has been and continues to be damaged by the defamatory nature of the words which clearly suggest something bad and dangerous by the obvious negative implications.

176. The false light in which the Plaintiff was placed would be highly offensive to a reasonable person.

26

177.	The Defendant acted with actual malice or with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

178.	Defendants' aforementioned statements, suggestions, misstatements, innuendos, insinuations, and the inferences therefrom published in reports and documents are defamatory in that they falsely attribute improper conduct to the Plaintiff and were published by the defendant with knowledge of their falsity and/or with reckless disregard for their truth or falsity.

179.	As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

### COUNT XII
### Intentional Infliction of Emotional Distress
### (Against Defendant Craig Sline, Robert Misner, and Kyle Hoefler)

180.	Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

181.	The aforesaid conduct and other conduct by Defendants was done intentionally, was outrageous, shocks the conscience, and has caused Plaintiff to suffer severe emotional distress and mental anguish.

182.	Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress.

183.	Plaintiff suffered and continues to suffer emotional distress.

184.	As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the

ordinary pleasures of everyday life and/or violations of his statutory rights.

## COUNT XIII
### Negligent Infliction of Emotional Distress
### (Against Defendant Craig Sline, Robert Misner, and Kyle Hoefler)

185. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

186. The aforesaid conduct by Defendants was done negligently and carelessly, was outrageous, and caused Plaintiff to suffer severe emotional distress and mental anguish.

187. Plaintiff specifically pleads that the tort underlying the negligent infliction of emotional distress is defamation, but also seeks to have this Court consider the torts that are or may be claimed in this action

188. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

## COUNT XIV
### Trespass
### (Against Defendant Kyle Hoefler)

189. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully stated herein.

190. Defendant forcibly, willfully, unlawfully, and without Plaintiffs' knowledge entered Plaintiff's land.

191. Defendant's conduct was a malicious and purposeful plan or negligently to violate Plaintiff's known and expressed property rights and interest in his land and acted in utter disregard to Plaintiff's property interests.

192. Defendant willfully and with such gross negligence carried out conduct on Plaintiff's

28

property with wanton disregard of the Plaintiff's property rights.

193. As a direct and proximate result of one or more of the foregoing acts of Defendant, Plaintiff's legal rights to enjoy his real and personal and a deprivation of comfort of his home in and around the property were violated.

194. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer harm, including humiliation, alienation, pain, emotional distress, anxiety, fear, loss of liberty, embarrassment, loss of self-esteem, loss of reputation, and loss of the ordinary pleasures of everyday life and/or violations of his statutory rights.

**WHEREFORE,** Plaintiff, KEITH POWELL, respectfully requests that this Court enter judgment in their favor, against Defendants and award him all relief as allowed by law, including but not limited to the following:

A. An injunction ordering Defendant to cease and desist from engaging in unlawful practices that deprived Plaintiff;

B. Actual economic damages as established at trial;

C. Compensatory damages, including but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses;

D. That Defendants file the necessary documents to restore Plaintiff's right to carry a firearm, as he did prior to September 25, 2022;

E. Punitive damages for all claims as allowed by law for all such claims where applicable;

F. Prejudgment and post-judgment interest at the highest lawful rate;

G. Appropriate tax off-set;

H. Attorneys' fees and costs; and

I. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Dated: September 25, 2023

Respectfully submitted,
**PINKSTON LAW GROUP, PC**

/s/ Danielle A. Pinkston

_____

Danielle A. Pinkston
54 North Ottawa Street, Suite #110
Joliet, Illinois 60432
Office: (773) 770-4771
Fax: (773) 770-4772
dpinkston@pinkstonlawgroup.com
Atty. for: KEITH POWELL

30